# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **MAURICE WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 02-1641 (RMC)** |
| | ) | |
| **DISTRICT OF COLUMBIA, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Maurice Williams filed this action under the Eighth Amendment, pursuant to 42 U.S.C. § 1983, seeking damages related to his alleged exposure to second-hand smoke while he was confined at the District of Columbia Department of Corrections Central Detention Facility ("D.C. Jail").[1] Defendants moved for summary judgment, Mr. Williams opposed, and the Court held a hearing on December 3, 2007. After careful consideration, the Court finds that Mr. Williams lacks standing to bring this action. Therefore, the Court will dismiss for lack of jurisdiction.

## I.  FACTS

In his Amended Complaint, Mr. Williams alleges that between 2001 and 2003, during a twelve and one-half month period while he was incarcerated at the D.C. Jail,[2] he was assigned to Southwest Unit 2. Am. Compl. ¶ 3. He asserts that smoking was permitted in every cellblock to

---

[1] While Mr. Williams originally proceeded pro se in this action, he is now ably represented by court-appointed counsel.

[2] In 2003, Mr. Williams was transferred to a prison in Terre Haute, Indiana.

which he was assigned and that every cell mate he had was a chain smoker. Pl.'s Opp., Ex. 3 at 78, 83-84, & 86-87. According to Mr. Williams, a significant number of the prisoners at the D.C. Jail smoked tobacco, as did members of the Jail staff. *Id.* at 86-86; Pl.'s Opp., Ex. 10 at 63. The Jail had a poor ventilation system with very little or any air movement in the cells, and in Mr. Williams's unit there were no windows or doors that could be opened to remove the tobacco smoke. Am. Compl. ¶ 5; Pl.'s Opp., Ex. 7 at 11-12; Pl.'s Opp., Ex. 8 at 13-15. In addition, his cellmate for some period smoked five packs of cigarettes a day and kept a homemade toilet paper wick burning at all times for the purpose of lighting cigarettes. Am. Compl. ¶ 5. Due to the constant exposure to tobacco smoke, Mr. Williams experienced nausea and nosebleeds. *Id.* Mr. Williams alleges that his health is at great risk due to the environmental tobacco smoke ("ETS"). While the D.C. Department of Corrections ("DOC") had adopted a non-smoking policy at the Jail in May 1992, *see* Defs.' Mem., Ex. 1, Mr. Williams contends that it was not enforced.

Mr. Williams alleges that he filed a number of grievances about the smoking problem with Jail personnel, but they made no effort to provide a nonsmoking environment, establish a designated smoking area, or otherwise resolve the issue. Pl.'s Opp., Ex. 3 at 121-32. Jail officials denied Mr. Williams's request to be transferred to a non-smoking block. *Id.* at 123-30. The DOC's records indicate that Mr. Williams never filed a grievance complaining of second-hand smoke. Defs.' Mem., Ex. 6; Pl.'s Opp., Ex. 3 at 130-135. Mr. Williams alleges that there are no records of his smoking grievances because they were destroyed by staff at the Jail. Pl.'s Opp., Ex. 3 at 130.

Mr. Williams contends that his health is at great risk due to ETS. In support of his claim, he relies on an analysis of the D.C. Jail's conditions by James L. Repace, a biophysicist and secondhand smoke consultant specializing in issues of indoor air pollution from ETS. Pl.'s Opp, Ex.

6. Mr. Repace previously has been qualified as an expert in a number of cases related to ETS. *Id.* Mr. Repace calculated the "uniformly diluted respirable particle air pollution concentration from secondhand smoke (SHS- RSP)" present in the D.C. Jail during the time of Mr. Williams's incarceration, using a four-month period from May 2, 2002 to August 2, 2002 as a "representative sample of conditions in the prison throughout the period of plaintiffs' incarceration." Pl.'s Opp., Ex. 5 at 3, 6. Mr. Repace's analysis has two main types of measurement, an air exchange rate and smoker density. Mr. Repace based the air exchange rate on the fact that smoking was permitted in 16 blocks of the Jail, that the Jail lacked documentation that the air-conditioning system was monitored, and that some cells had low or no air flow. *Id.* at 4-5. Mr. Repace calculated the smoker density using the dimensions of the Jail, the number of inmates, the number of cigarettes and cigars sold by the Jail canteen in 2002, the rate of ventilation, and an estimate of the number of smokers among the inmate population, extrapolated from other jail studies. *Id.* He concluded that the level of ETS to which Mr. Williams was exposed was in the "Very Hazardous" range of the Federal Air Quality Index. *Id.* at 7 & 18. Furthermore, Mr. Repace opines that Mr. Williams's exposure to second-hand smoke has increased his risk of developing heart disease, lung cancer, asthma, and nasal sinus cancer:

> 6. The calculated dose of SHS [second-hand smoke] to which the plaintiffs'[3] were exposed in the DC Jail was 38 times higher than for adult males in U.S. Population as recently as 2002. The plaintiffs' calculated dose exceeds the 95th percentile of adult male SHS exposure in 2001-2002.
>
> 7. The plaintiffs' calculated serum cotinine level reflects a SHS

---

[3] Because the expert wrote his report on behalf of Mr. Williams and on behalf of a plaintiff in a similar suit, *Abdullah v. Dist. of Columbia Dept. of Corrections*, Civil Case No. 02-1642, the report refers to "plaintiffs."

exposure which has increased their risk of developing heart disease by a calculated 55% as a result of their exposure to SHS in the DC Jail for a 1 year period.

8. The SHS exposure of the plaintiffs is 38 times the lung cancer risk based on the SHS exposure level for the average adult U.S. male for 1 year's exposure. This increase in risk will decline very slowly, taking 40 years to return to normal.

9. The plaintiffs have been put at risk for both nasal sinus cancer and asthma induction, although the amount is difficult to quantify.

10. These conclusions are reached to [sic] within a reasonable degree of scientific certainty.

*Id.* at 18. Mr. Williams claims that Defendants' conduct constituted deliberate indifference to the risk to his health. Am. Compl. ¶ 7.

Mr. Williams brought this suit against the District of Columbia and against the following former employees of the DOC, in their individual capacities: Odie Washington, Director of the DOC; James Anthony, Assistant Director of the DOC; Marvin L. Brown, Deputy Director for Operations at the D.C. Jail; and Judy Lyons, Deputy Warden for Support Services at the D.C. Jail. Mr. Williams seeks compensatory and punitive damages, claiming that his Eighth Amendment rights were violated when Defendants, with deliberate indifference, exposed him to levels of ETS that posed an unreasonable risk of serious damage to his future health.[4] Defendants have filed a motion

---

[4] To state an Eighth Amendment claim based on exposure to ETS, a plaintiff must allege that, with deliberate indifference, defendants exposed him to levels of ETS that posed an unreasonable risk of serious damage to his future health. *Helling v. McKinney*, 509 U.S. 25, 35 (1993). The Supreme Court in *Helling* established that an inmate may obtain injunctive relief based on the risk of future health problems. *Id.* at 33. A plaintiff must provide "objective" evidence of the degree of his exposure and its effect on him and "subjective" evidence of deliberate indifference by prison officials. *Id.* at 35-37. To prevail, a plaintiff must provide some kind of "scientific and statistical" evidence regarding the seriousness of the potential harm and the likelihood that unreasonable risk of serious damage to his future health was actually caused by exposure to ETS. *Scott v. District of Columbia*, 139 F.3d 940, 942 (D.C. Cir.1998). A court must assess whether society considers the

for summary judgment and Mr. Williams opposes.  The Court held a hearing on this matter on December 3, 2007.  Upon consideration of the parties' arguments and the pleadings, the Court has determined that it lacks jurisdiction because Mr. Williams does not have standing to bring this suit.

## II. STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938).  No action of the parties can confer subject matter jurisdiction upon a federal court because subject matter jurisdiction is an Article III as well as a statutory requirement.  *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003).  Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim.  *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003).  Moreover, the court is not limited to the allegations contained in the complaint.  *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987).  To determine whether it has jurisdiction over the claim, the court may consider materials outside the pleadings.  *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

---

risk complained of "so grave that it violated contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Helling,* 509 U.S. at 36.  This Court already has ruled that Mr. Williams stated an Eighth Amendment claim under *Helling*. *See* Mem. Op. filed Aug. 5, 2003 [Dkt. #24].

## III.  DISCUSSION

### A.  Exhaustion of Administrative Remedies under the PLRA

Defendants contend that Mr. Williams failed to exhaust his administrative remedies.[5]

The Prison Litigation Reform Act ("PLRA") provides that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  The exhaustion requirement of § 1997e(a) is mandatory and  "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002).  While the failure to exhaust is an affirmative defense under the PLRA, *Jones v. Bock*, 127 S. Ct. 910, 921 (2007), it is not jurisdictional, *Ali v. Dist. of Columbia*, 278 F.3d 1, 5-6 (D.C. Cir. 2002).  Because the PLRA's exhaustion requirement is not jurisdictional and because Mr. Williams's claims are barred because he lacks standing, the Court need not consider the merits of Defendants' exhaustion defense.  *See id*. at 6.

### B.  PLRA Requires a Physical Injury

Defendants contend that this suit is barred under the PLRA.  That law provides, "[n]o Federal civil action may be brought by a prisoner confined in a . . . prison . . . for mental or emotional injury suffered in custody without a prior showing of physical injury."  42 U.S.C. §

---

[5] The parties dispute Mr. Williams's grievance history.  Mr. Williams claims he filed numerous grievances concerning ETS, yet Defendants' files show no record of such grievances.  Mr. Williams asserts that Defendants destroyed the grievances he filed.  He also explains that he did not pursue the second and third steps of the three-step grievance process because the Inmate Grievance Procedure rules require that an appeal be accompanied by a copy of the original grievance and the response from the administrator, *see* Defs.' Mem., Ex. 5 Part G ¶ 3, and Mr. Williams never received a response from the administrator.

1997e(e).   In the absence of physical injury, a claim for compensatory damages for mental or emotional injury is precluded by § 1997e(e).  *Davis v. District of Columbia*, 158 F.3d 1342, 1348 (D.C. Cir. 1998).   However, this section of the PLRA does not bar a claim for injunctive or declaratory relief.  *Davis*, 158 F.3d at 1346.  *See Helling*, 509 U.S. at 33 (in the absence of a present physical injury resulting from exposure to second-hand smoke, an inmate may obtain injunctive relief based on the risk to his future health).  Mr. Williams does not assert that he is seeking damages for mental or emotional injury.  Instead, he seeks damages for an increased risk of future harm.

C.  Standing

As a matter of basic constitutional law, federal courts are limited to deciding cases and controversies, and the issue of standing is one feature of such limitation.  *Am. Legal Found. v. FCC*, 808 F.2d 84, 88 (D.C. Cir. 1987) (citing *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982)).  A plaintiff's standing under Article III of the United States Constitution must be determined in order to establish the jurisdiction of the Court to hear the case and reach the merits.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998); *Grand Council of the Crees v. FERC*, 198 F.3d 950, 954 (D.C. Cir. 2000). "Standing focuses on the complaining party to determine 'whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'"  *Am. Legal Found.*, 808 F.2d at 88 (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  Standing is an "irreducible constitutional minimum."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

To have Article III standing, a plaintiff must establish: "(1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is

likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan*, 504 U.S. at 560-61). The injury alleged cannot be conjectural, hypothetical, remote, speculative or abstract; it must be certainly impending. *Nat'l Treasury Employees Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996).

Mr. Williams's claim for damages for the alleged increased risk of to his health is insufficient to establish standing under these precedents. Mr. Williams asserts no actual or imminent injury, no injury that is certainly pending, no injury that can be redressed by a damages award — he only asserts a remote and speculative injury.

This suit is analogous to a recently decided case in this district, *Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp.2d 1 (D.D.C. 2007). The plaintiffs in *Randolph* were insureds who filed suit against their insurer after a laptop containing the plaintiffs' personal information was stolen from the home of data analyst who worked for the insurer. The plaintiffs contended as a result of the burglary they incurred a substantial risk of identity theft. *Id*. at 4. Significantly, none of them claimed that they had been the victims of identity theft, that the burglar intended to steal their personal information, or that they had suffered any actual loss. *Id*. at 7. The court found "[p]laintiffs' allegations therefore amount to mere speculation that at some unspecified point in the indefinite future they will be the victims of identity theft. . . . Plaintiffs' claims that they are subject to an increased risk of identity theft and inconvenience as a result of the burglary therefore fail to allege an injury in fact." *Id*. at 8. "[A]n allegation of increased risk of identity theft due to stolen personal data, without more, is insufficient to demonstrate a cognizable injury." *Id*. at 7.

The D.C. Circuit has allowed standing in environmental-harm cases based on an

alleged increased risk of harm. *Natural Res. Def. Council ("NRDC") v. EPA*, 464 F.3d 1, 6 (D.C. Cir. 2006); *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1234-35 (D.C. Cir. 1996). However, because environmental injuries are often probabilistic, the Circuit has "cautioned that this category of injury may be too expansive. Were all purely speculative 'increased risks' deemed injurious, the entire requirement of actual or imminent injury would be rendered moot, because all hypothesized, nonimminent 'injuries' could be dressed up as 'increased risk of injury.' We therefore generally require that petitioners demonstrate a 'substantial probability' that they will be injured." *NRDC*, 464 F.3d at 6. Thus, the Circuit allows standing "when there was at least *both* (i) a *substantially* increased risk of harm and (ii) a *substantial* probability of harm with that increase taken into account." *Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1295 (D.C. Cir. 2007) (citing *Mountain States*, 92 F.3d at 1234-35) (emphasis in original).

      *Mountain States* is illustrative. There, nonprofit corporations, a lumber company, and municipalities brought suit to prevent the Forest Service from implementing a decision to limit timber harvesting in a national forest. The D.C. Circuit found that the incremental increase in the risk of forest fires due to the Forest Service's decision was a sufficient threat to environmental interests to support standing to challenge the decision. "[T]he potential destruction of fire is so severe that relatively modest increments in risk should qualify for standing." *Id.* at 1235. Thus, the Circuit found standing where the plaintiffs showed both a substantial increased risk of injury together with a substantial probability of harm. Similarly, in *NRDC*, an environmental group consisting of 500,000 members sought review of an EPA rule permitting critical-use exemptions from a general ban on the production and consumption of methyl bromide. *NRDC*, 464 F.3d at 3. There was evidence indicating that the lifetime risk that an individual will develop nonfatal skin cancer as a

result of the EPA rule was about 1 in 129,000 or 1 in 200,000.  *Id*. at 7.  The court found that this risk was sufficient to support standing in that two to four of NRDC's members could develop cancer as a result of the EPA rule.  *Id*; *accord Public Citizen*, 489 F.3d at 1295  (in suit filed by citizens group seeking review of National Highway Traffic Safety Administration rules regarding tire pressure, the court  required that the parties supplement the record to inform the court whether the NHTSA rules created an increased risk of injury and whether the ultimate risk of harm was substantial).

Like the plaintiffs in *Mountain States* and *NRDC*, Mr. Williams claims an increased risk to his health based on environmental exposure.  The analogy, however, stops there.  In those cases, the plaintiffs were large organizations who were seeking injunctive relief.  The organizations only had to show that at least one of their members had standing to sue in his own right.  *NRDC*, 464 F.3d at 5.  NRDC could do this based on statistics — two to four of its one-half million members would develop cancer as a result of the EPA rule.  Notably, NRDC did not have to demonstrate *which* of its members would be harmed.  The nonprofit groups, lumber companies, and municipalities in *Mountain States* complained about the risk of devastating forest fires — such harm by its nature would affect all members of the plaintiff organizations equally.  Based on statically proven standing, the court permitted NRDC and the plaintiffs in *Mountain States* to pursue injunctive relief.

Here, Mr. Williams must show that he personally has standing — that he has both (i) a substantially increased risk of harm and (ii) a substantial probability of harm with that increase taken into account.  Mr. Williams submitted the report of an expert, Mr. Repace, indicating that the population at the D.C. Jail who were exposed to ETS for a period of one year at the time Mr.

Williams was incarcerated will suffer a 55% increased risk of heart disease, 38 times the lung cancer risk of the average adult U.S. male, and an unquantifiable increase in the risk of nasal sinus cancer and asthma induction.  While the report reflects an increased risk of harm, it does not indicate the probability of harm *to Mr. Williams*.  Mr. Repace never tested Mr. Williams.  Defs.' Mem., Ex. 3 at 149-50.  Mr. Williams did not present any evidence that he has suffered any actual injury due to his exposure to ETS at the D.C. Jail, and he has not named an expert regarding his physical condition.  The expert's report alone is insufficient to take this suit out of the category of the hypothetical.  The potential future injury asserted by Mr. Williams is too remote and speculative to support standing in this case.

## IV.   CONCLUSION

For the reasons explained above, this case will be dismissed for lack of jurisdiction. A memorializing order accompanies this Memorandum Opinion.

Date:   January 3, 2008                                     /s/
                                              ROSEMARY M. COLLYER
                                              United States District Judge